# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILAL AHDOM, | CASE NO. 1:09-cv-01874-AWI-SMS PC |
| Plaintiff, | FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| S. LOPEZ, et al., | (ECF No. 13) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

**I.   Screening Requirement**

Plaintiff Bilal Ahdom ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983, filed this action on October 26, 2009. Currently before the Court is the first amended complaint, filed September 14, 2010. (ECF No. 13.)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v.

1

1  Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555
2  (2007)).
3       Under section 1983, Plaintiff must demonstrate that each defendant personally participated
4  in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires
5  the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S. Ct.
6  at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). "[A] complaint [that]
7  pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line
8  between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting
9  Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations
10 contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 129
11 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere
12 conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

13 **II.**   **Complaint Allegations**

14      Plaintiff is in the custody of the California Department of Corrections and Rehabilitation
15 ("CDCR") and is incarcerated at the California Substance Abuse Treatment Facility in Corcoran.
16 Plaintiff brings this action against Defendants CDCR, S. Lopez, Dr. Chen, Hedgepath, Schaefer, Dr.
17 Spaeth, Dr. Shittu, Dr. Ashby, Araich, Dr. Rashidi, Dr. Paik, Orthopedic Medical Group, Matheny,
18 M. Tolano, Kimura, D. Ghedhart, Harrington, and Does One through Seven alleging deliberate
19 indifference to serious medical needs in violation of the Eighth Amendment and violation of the
20 Americans With Disabilities Act ("ADA"). (First Am. Compl. ¶¶ 7-25.)
21      On May 1, 2008, while housed at Kern Valley State Prison, Defendant Rashidi performed
22 back surgery on Plaintiff. Defendant Rashidi ordered the incision be cleaned and dressed every two
23 days and a six week follow -up appointment, but did not prescribe antibiotics after surgery. (Id. ¶
24 26.) Plaintiff was seen by Defendant Araich on May 9, 2008, and she entered an order that his
25 incision be cleaned and dressed every two days. (Id. ¶ 27.) Plaintiff's incision was not cleaned and
26 dressed. (Id. ¶ 29.) On May 24, 2008, Plaintiff was seen by Defendants Doe One and Two and told
27 them that his staples were to have been removed on May 12, 2008, and that he was in pain and the
28 incision was cracked, bleeding, and swollen. Defendants Doe One and Two confirmed that the

staples were to have been removed around May 12, 2008, and informed him that his staples would not be removed until May 27, 2008. (Id. ¶ 30.) On May 27, 2008, Doe Three removed Plaintiff's staples without providing him with additional pain medication, despite Plaintiff telling her to stop because the removal was causing him excruciating pain. (Id. ¶ 32.)

From May 24, 2008 through September 11, 2008, Plaintiff requested antibiotics, a lower cell assignment, assignment to an ADA cell, a lower bunk and mattress chrono, a chrono exempting him from "proning," and effective pain management from Defendants Araich, Doe One, Doe Two, Chen, Shittu, and Ashby which were denied. (Id. ¶¶ 28, 30, 31, 35-39, 43, 44.) Plaintiff alleges that due to the denial of his requests he was forced to suffer excruciating pain and his healing was interrupted. (Id. ¶ 40.)

Plaintiff did not see Defendant Rashidi until August 12, 2008, and on June 12, 2008, Plaintiff filed an appeal regarding not having a six week follow-up appointment. (Id. at ¶¶ 33, 34.) Plaintiff complained about his medical treatment and lack of accommodations to Defendants Lopez and Spaeth.

On October 5, 2008, Plaintiff was taken to Delano Emergency after he injured his Achilles tendon and was placed in a knee high cast and issued crutches. (Id. ¶ 45.) Plaintiff was seen by Defendants Shittu and Schaefer and requested pain medication, treatment for his tendon injury, and chronos for a lower tier/bunk cell, and other ADA accommodations. (Id. ¶¶ 46-50.)

On October 27, 2008, Plaintiff was seen by Defendant Paik at the Orthopedic Medical Center who informed Plaintiff that his injury should be treated as soon as possible and ordered a pre-surgery MRI. (Id. ¶¶ 51, 52.) Defendant Paik refused Plaintiff's request that he be admitted to the hospital immediately and an emergency MRI ordered so there would be no delay in treatment. (Id. ¶ 53.) Plaintiff was examined by Defendant Schaefer on October 30, 2008, and sent to Delano Emergency Room for pain in his back and leg. (Id. ¶ 56.) An MRI was done on November 7, 2008. (Id. ¶ 57.) Plaintiff saw Defendant Schaefer on November 10, 2008. Plaintiff requested a lower tier cell due to his cast and crutches. Defendant Schaefer denied the chrono, increased his medication, and told him he would be scheduled for an epidural injection. (Id. ¶ 58.)

Plaintiff was taken to Delano Emergency Room after his cast caught on the stairs and he fell

injuring his back on November 22, 2008. (Id. ¶ 59.) At the follow-up visit with Defendant Paik, Defendant refused to perform surgery on Plaintiff's tendon. (Id. ¶ 60.) Plaintiff was told by Dr. Chandrasekaran, more than seven weeks after the injury, that he did not recommend surgery because the surgical repair should have been done within seven to fourteen days to obtain the best results. (Id. ¶ 61.)

On November 25, 2008, Plaintiff mailed complaints to Defendants Hedgepeth and Kimura informing them of the delays in receiving medical care, continued pain, and denial of ADA accommodations. (Id. ¶ 63.) On December 17, 2008, Plaintiff was moved to a lower tier. (Id. ¶ 68.)

Plaintiff was examined by Dr. Amirpour on January 5, 2009, and was diagnosed with a complete tear of his Achilles tendon. Dr. Amirpour did not recommend surgery due to the length of time since the injury occurred. (Id. ¶ 71.) Plaintiff was examined by Dr. Rahimifar on January 22, 2008, who determined that Plaintiff would benefit from a more effective pain medication, but Defendant Lopez denied the recommendation. (Id. ¶ 72.)

From May 4, 2008 through December 16, 2008, Plaintiff made numerous requests to Defendants Matheny, Doe Four, and Doe Five that he be moved to a lower cell due to pain from walking the stairs and fear of falling. (Id. ¶ 65.) Defendants Matheny, Doe Four, and Doe Five refused Plaintiff's requests because they were not authorized to move Plaintiff without a lower tier/bunk chrono. (Id. ¶ 67.)

Plaintiff's appeals requesting effective pain management and an orthopedic mattress were denied by Defendants Schaefer, Lopez, Spaeth, and Tolano. The orthopedic mattress was denied because it was determined not to be medically necessary, although Dr. Qamar had authorized the issuance of an orthopedic mattress on July 7, 2007. (Id. ¶ 73.) Plaintiff's request to see a specialist at the University of California, Davis was denied by Defendants Lopez, Schaefer, and Shittu on June 23, 2009. (Id. ¶ 81.) Plaintiff is seeking declaratory relief and general and punitive damages.

**III.   Discussion**

    **A.   Americans With Disabilities Act**

Title II of the Americans with Disabilities Act ("ADA") prohibits discrimination on the basis of disability. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II provides that "no

4

qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 118 S. Ct. 1952, 1955 (1998); see also Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010).

To establish a violation of Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was "excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (3) "such exclusion or discrimination, or denial of benefits was because of his disability." Simmons, 609 F.3d at 1021 (citations omitted); Martin v. California Dept. of Veterans Affairs, 560 F.3d 1042, 1047 (9th Cir. 2009). "The ADA prohibits discrimination because of disability, not inadequate treatment for disability." Simmons, 609 F.3d at 1022. The treatment or lack of treatment of a plaintiff's disability does not provide a basis upon which to impose liability. Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005) (ADA claim cannot be based upon medical treatment decisions); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."). Additionally, the Ninth Circuit has held that a temporary disability does not constitute a disability under the ADA. Sanders v. Amenson Products, Inc., 91 F.3d 1351, 1354 (9th Cir. 1996.)

Plaintiff has failed to set forth any factual allegations that he has been denied any benefits because of a disability. Simmons, 609 F.3d at 1021. Since Plaintiff has failed to set forth allegations that he was discriminated against because of a disability, the Court need not decide if Plaintiff has a qualifying disability under the ADA. Plaintiff alleges that he has been denied accommodations and treatment for his medical conditions, the allegations of inadequate treatment for a disability are insufficient to state a cognizable claim. Id.

### B. Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two part test for

deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons, 609 F.3d at 1018. "Deliberate indifference is a high legal standard." Id. at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff allegations of deliberate indifference to his medical needs based upon two separate medical conditions, the back surgery and the injury to his Achilles tendon, meet the first prong of the deliberate indifference analysis. The second prong will be analyzed in relation to the deprivations alleged.

### 1.   Denial of Medication

Plaintiff alleges that following his back surgery, Defendants refused to prescribe an antibiotic even though he requested one to avoid infection. Although Plaintiff alleges that Defendants should have inferred that he was at danger of getting an infection, he fails to allege facts to indicate that he was at risk of infection. Plaintiff's allegations that the surgical site was swollen, cracked, and bleeding are insufficient to allege that he had an infection. The facts alleged in the complaint state a difference of opinion between Plaintiff and prison medical authorities as to proper treatment and do not give rise to a claim. Franklin v. Oregon, 662 F.2d 1337, 1355 (9th Cir. 1981); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970).

Plaintiff also alleges that Defendants were deliberately indifference by failing to provide effective pain manage following his surgery. Plaintiff's allegations that, between May and October 6, 2008, he informed Defendants Doe One, Doe Two, Araich, Chen, Shittu, Ashby, Lopez, and Spaeth that his pain medication was ineffective and they failed to act and that Defendant Doe Three removed his staples without pain medication are sufficient to state a cognizable claim.

However, Plaintiff fails to state a cognizable claim against any other defendant for denial of

medication. While Plaintiff claims that his complaints regarding his pain medication were disregarded, the complaint evidences otherwise. After October 5, 2008, when he injured his Achilles tendon, Plaintiff saw Defendant Shittu on October 6, 2008, and codeine was ordered. (First Am. Compl. at ¶ 46.) On October 15, 2008, Plaintiff saw Defendant Shittu and complained about his severe pain. Defendant Shittu prescribed Ibuprofen. (Id. at ¶ 48.) On October 21, 2008, Plaintiff saw Defendant Schaefer who prescribed a neuro pain medication four times daily. (Id. at ¶ 50.) On October 30, 2008, Plaintiff was seen by Defendant Schaefer regarding pain in his back and right leg. Defendant Schaefer sent Plaintiff to the Delano Emergency Room to be examined for possible blood clots and ordered codeine for pain. (Id. at ¶ 56.)

Plaintiff saw Defendant Schaefer on November 10, 2008, who increased his pain medication, and informed him she would recommend he receive an epidural. (Id. at ¶ 58.) Plaintiff was taken to Delano Emergency Room on November 22, 2008, after his cast caught on the stairs causing him to fall and injure his back. (Id. at ¶ 59.) Plaintiff was examined by Defendant Schaefer on December 5, 2008, and she made changes to Plaintiff's pain medication. (Id. at ¶ 64.) On February 9, 2009, Plaintiff saw Defendant Schaefer and complained that the medication was making him nauseous and caused vomiting. Defendant Schaefer informed Plaintiff that his body had not had time to adjust to the medication and it was the best medication for Plaintiff's chronic pain. (Id. at ¶ 75.) On February 26, 2009, Plaintiff complained to Defendant Rashidi that he was continuing to have bad reactions to the pain medication and Defendant Rashidi changed his medication. (Id. at ¶ 79.)

Plaintiff's allegation that after he was examined by Defendant Rashidi on December 23, 2008, Defendant Lopez failed to follow Defendant Rashidi's recommendation to prescribe Morphine, (id. at ¶ 69), states a difference of opinion between medical providers regarding treatment that does not amount to deliberate indifference, Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). The facts show that after Plaintiff injured his Achilles tendon, he was seen eight times by his medical providers who made adjustments to his medication in response to his complaints. See Estelle, 429 U.S. at 107 (medical decision regarding treatment is at most medical malpractice which does not state a claim for deliberate indifference). Plaintiff has failed to allege facts that any Defendant was deliberately indifferent to his need for pain medication after October 5, 2008.

### 2.     Denial of Requests for Accomodation

Plaintiff allegations that Defendants refused his requests that he be assigned an ADA cell, a lower bunk and mattress chrono, and an exemption from proning due to his back pain fail to state a cognizable claim. Plaintiff's medical providers denied Plaintiff's requests after determining that the accommodations were not medically necessary. Plaintiff's statement that the healing of his back was interrupted is insufficient to establish that he suffered any injury from the denial of the requests for accommodation. Additionally, the fact that Dr. Qamar had authorized the issuance of an orthopedic mattress on July 7, 2007, (id. at ¶ 73), does not state a cognizable claim against Defendants for denying Plaintiff's request, Vild, 891 F.2d at 242.

Plaintiff's allegation that, after being placed in a cast, he was denied a lower tier chrono and subsequently fell down the stairs injuring his back is sufficient to state a claim against Defendants Shittu and Schaefer.

However, Plaintiff fails to state a cognizable claim against Defendants Hedgepeth, Kimura, Matheny, Doe Four, and Doe Five. Plaintiff states that he mailed complaints to Defendants Hedgepeth and Kimurra informing them of the denial of his requests on November 25, 2008. (First Am. Compl. at ¶ 63.) Approximately three weeks later, on December 17, 2008, Plaintiff was moved to a lower tier. (Id. at ¶ 68.) The Court takes judicial notice that the complaints were mailed during the week of Thanksgiving. The complaint fails to show that Defendants Hedgepeth and Kimura were deliberately indifferent given that Plaintiff was moved soon after notifying them of his complaints.

Although Plaintiff requested a lower tier from Defendants Matheny, Doe Four, and Doe Five, they did not move Plaintiff to a lower tier because they were not authorized to move Plaintiff without a lower tier/bunk cell chrono. (Id. at ¶ 67.) When resolving a claim under the Eighth Amendment against individual defendants, causation must be resolved by "a very individualized approach which accounts for the duties, discretion, and means of each defendant." Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988) citing with approval Williams v. Bennett, 689 F.2d 1370, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party. One may be callously indifferent to the fate of

8

prisoners and yet not be liable for their injuries. Those whose callous indifference results in liability are those under a duty -- possessed of authority and means -- to prevent the injury.") Since Defendants Matheny, Doe Four, and Doe Five did not have the authority to move Plaintiff they are not liable for the failure to grant his request.

### 3.  **Denial of Surgery**

Initially, while Plaintiff alleges that he was seen by Defendants Shittu and Schaefer who failed to act on his request for emergency treatment of his Achilles tendon, the record shows otherwise. Plaintiff was sent to a specialist approximately three weeks after his injury. The request to see a specialist would have been submitted by the treating physician, therefore his need for treatment was addressed.

Plaintiff alleges that Defendant Paik was deliberately indifferent in failing to admit him to the hospital and order an emergency MRI on October 27, 2008. Plaintiff claims that the delay in treating his injury caused him to be unable to have surgery to repair his Achilles tendon. Plaintiff received his MRI on November 7, 2008, and was seen by Defendant Paik for a follow-up appointment on November 25, 2008. (Id. at ¶¶ 57, 60.) Plaintiff complains that Defendant Paik refused to perform surgery although he had stated that he would at the initial examination. However, at the time of the initial examination Defendant Paik would not have had the results of the MRI and therefore, would not know the extent of Plaintiff's injury.

The facts as alleged show that Defendant Paik determined that the MRI results indicated that surgery was not appropriate. This is further supported by the fact that Plaintiff was seen by other specialists who informed him that he was not a candidate for surgery. (Id. at ¶¶ 61, 71.) Plaintiff was informed by Dr. Chandrasekaran that surgery should have been done within seven to fourteen days of the injury to obtain the best results. The initial appointment with Defendant Paik occurred October 27, 2008, twenty two days after the injury. Neither the decision that Plaintiff was not a candidate for surgery or the refusal to admit Plaintiff to the hospital on October 27, 2008, rise to the level of deliberate indifference. Plaintiff's disagreement with the treating physician as to proper treatment does not give rise to a claim. Franklin, 662 F.2d at 1355; Mayfield, 433 F.2d at 874. Additionally, there is no indication that Defendants Shittu, Schaefer, or Paik were aware that

Plaintiff's injury needed surgical treatment sooner and deliberately failed to act.

To the extent that Plaintiff is alleging that Defendants were negligent or failed to diagnose and properly treat him, he fails to state a cognizable claim. An allegation by a prisoner that a physician has been merely indifferent or negligent or has committed medical malpractice in diagnosing or treating a medical condition does not state a constitutional claim. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980); Toguchi, 391 F.3d at 1057. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

Plaintiff alleges that, in February 2009, Plaintiff sent letters to Defendants Ghedhart and Harrington informing them about the delays in medical treatment, denials of accommodations, and ineffective pain management and they failed to act. (First Am. Compl. at ¶¶ 77, 78.) However, by this date, Defendants were treating Plaintiff with multiple medications in an attempt to address his complaints regarding pain and he had been assigned a lower cell. Plaintiff fails to show that Defendants Ghedhart or Harrington failed to act in response to any serious medical need that was not already being addressed by his treating physicians.

### 4. Failure Comply With Surgeon's Orders

Plaintiff's allegations that the orders made by Defendant Rashidi were not followed, fails to state a cognizable claim. While Plaintiff states that Defendant Araich failed to clean and dress his wounds every two days as ordered, he has failed to show that it was her responsibility to clean and change the dressings, or that she was aware that his wounds were not being dressed. When Plaintiff was seen by Defendant Araich on May 9, 2008, she entered an order for his wounds to be cleaned and dressed, Plaintiff may not state a claim against Defendant Araich based upon the failure of other prison employees to follow the orders issued. Iqbal, 129 S. Ct. at 1948. The factual allegations do not link the failure to clean and dress his wounds to any named defendant.

When Plaintiff was seen on May 24, 2008, his wound was cleaned and dressed and Plaintiff was informed that his staples would be removed on May 27, 2008. While Plaintiff complains that Defendant Rashidi ordered his staples to be removed on May 11, 2008, the difference of opinion between treating professionals as to when the staples should be removed is insufficient to state a

cognizable claim. Vild, 891 F.2d at 242. The facts as alleged do not "show that the course of treatment the doctors choose was medically unacceptable under the circumstances, . . . and . . . they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Further there is no indication that the failure to remove the staples resulted in serious harm to Plaintiff.

Finally, assuming that Plaintiff could show he suffered serious harm, Plaintiff's statement that Defendant Lopez did not ensure that Plaintiff was transported for a six week follow-up appointment fails to show that Defendant Lopez had any knowledge of Plaintiff's need to be transported. Plaintiff fails to set forth factual allegations to link any defendant to the failure to follow-up with Defendant Rashidi within two weeks.

### 5. Referral to Specialist

Plaintiff claims that Defendants Lopez, Schaefer, and Shittu failed to have Plaintiff examined by a specialist at the University of California, Davis. According to Plaintiff's complaint, he has been seen by several medical specialists who determined that he is not a candidate for surgery to repair the injury to his Achilles tendon and the fact that he wants additional consultations does not state a cognizable claim. Franklin, 662 F.2d at 1355; Mayfield, 433 F.2d at 874.

### C. Defendant Liability

Plaintiff may not bring suit against CDCR or against Defendants in their official capacity. "The Eleventh Amendment bars suits for money damages in federal court against a state [and] its agencies . . ." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007), "regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity," Yakama Indian Nation v. State of Washington, 176 F.3d 1241, 1245 (9th Cir. 1999); see also Seminole Tribe of Fla. v. Florida, 116 S. Ct. 1114, 1122 (1996). The CDCR is a state agency entitled to Eleventh Amendment Immunity. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

### D. Declaratory Relief

In addition to money damages, Plaintiff seeks a declaration that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village,

333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that Defendants violated Plaintiff's rights is unnecessary, and this action shall proceed as one for money damages only.

IV.    **Conclusion and Order**

Plaintiff's first amended complaint sets forth a cognizable claim against Defendants Araich, Chen, Shittu, Ashby, Lopez, Spaeth, Doe One, Doe Two, and Doe Three for failure to provide adequate pain medication; and Defendants Schaefer and Shittu for failing to grant his lower tier accommodation in violation of the Eighth Amendment. However, Plaintiff's complaint does not state any other claims for relief under section 1983. Because Plaintiff has previously been notified of the deficiencies and given leave to amend, the Court recommends that the non-cognizable claims be dismissed, with prejudice. Noll, 809 F.2d at 1448-49. Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed September 14, 2010, against Defendants Araich, Chen, Shittu, Ashby, Lopez, Spaeth, Doe One, Doe Two, Doe Three, and Schaefer for deliberate indifference to medical needs for monetary relief;

2. Plaintiff's ADA and remaining Eighth Amendment claims be dismissed, with prejudice, for failure to state a claim under section 1983; and

3. Defendants CDCR, Rashidi, Paik, Orthopedic Medical Center, Matheny, Hedgepeth, Kimura, Tolano, Ghedhart, Harrington, and Does Four through Seven be dismissed, with prejudice, based upon Plaintiff's failure to state a cognizable claim against them.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written

objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    October 14, 2011**                          /s/ Sandra M. Snyder
                                                UNITED STATES MAGISTRATE JUDGE